IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ELI SALVADOR MINAS URBINA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:20-cv-325 (LMB/MSN) |
| ) | |
| WILLIAM BARR, in his official capacity as ) | |
| Attorney General of the United States, et al., ) | |
| ) | |
| Respondents. | |

MEMORANDUM OPINION

Petitioner Eli Salvador Minas Urbina ("petitioner" or "Urbina") has filed a Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, in which he alleges that he is being unlawfully detained by United States Immigration and Customs Enforcement ("ICE"). In response to the Petition, respondents William Barr, Chad Wolf, and Kim Zanotti, who have been named in their respective capacities as Attorney General of the United States, Secretary of the Department of Homeland Security ("DHS"), and Director of ICE's Washington Field Office (collectively, "respondents"),[1] have filed a Motion for Summary Judgment ("Motion"). Both the Petition and the Motion are now before the Court. For the following reasons, Urbina's Petition will be granted in part and dismissed in part, and respondents' Motion will be granted in part and denied in part.

---

[1] The Petition also named as a respondent Jeffrey Crawford in his official capacity as Warden of Immigration Centers for America in Farmville ("ICA-Farmville"), the facility at which petitioner is detained. In response, Crawford has asserted that he "is a private employee as opposed to a government actor and . . . is therefore named solely as a nominal respondent in this case," and that he "takes no position on the legal basis of petitioner's immigration detention but, to the extent required to do so, incorporates by reference any response filed by the United States Attorney's Office on behalf of the other respondents." [Dkt. 10 ¶ 1].

## I. BACKGROUND

Urbina is a 29 year-old native and citizen of Guatemala who first entered the United States on January 23, 1997, when he was six years old, as an asylee. [Dkt 7-1 ¶ 5].[2] In 1998, Urbina was granted lawful permanent resident status as of his date of entry. Id. ¶ 6. Almost two decades later, in 2015, Urbina was charged with and pleaded guilty to five counts of statutory burglary, in violation of Va. Code Ann. § 18.2-91, for which he was sentenced to 10 years' imprisonment with nine years suspended as to each count, all five sentences to run concurrently. Id. ¶¶ 7–8.

On May 24, 2017, following his release from state custody, ICE arrested Urbina pursuant to an administrative arrest warrant and issued him a Notice to Appear. Id. ¶ 9. The Notice to Appear charged Urbina with being removable from the United States under both 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two or more crimes involving moral turpitude, and 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony. Id. Both charges of removability were based on Urbina's 2015 statutory burglary convictions. Id.

On June 28, 2017, Urbina appeared with counsel before an immigration judge ("IJ") for his first master calendar hearing, at which he denied both charges of removability. Id. ¶ 11. Following the hearing, Urbina filed a motion to terminate his removal proceedings, in which he contested the charges. Id. ¶ 12. On August 16, 2017, the IJ sustained the charges but granted Urbina leave to file any applications for relief from removal. Id. ¶ 14. Urbina appealed the IJ's

---

[2] Citations to Dkt. 7-1 are citations to the Declaration of James Mullen, an ICE employee who "ha[s] been personally involved in managing [Urbina's] case" and "[is] familiar with the facts and circumstances regarding [Urbina's] immigration proceedings and custody status." [Dkt. 7-1 ¶¶ 3–4]. Respondents submitted Mullen's Declaration in connection with the Motion, and where it is cited, Urbina has not disputed its contents.

decision sustaining the charges of removability to the Board of Immigration Appeals ("BIA"). Id. ¶ 16. The BIA dismissed the appeal as impermissibly interlocutory. Id. ¶ 18.

On October 10, 2017, Urbina filed a Form I-130 visa petition with the United States Citizenship and Immigration Services ("USCIS") in an effort to obtain re-adjustment of his immigration status through his mother, who is also a lawful permanent resident. Id. ¶¶ 15, 17. On November 22, 2017, Urbina's visa petition was granted. Id. ¶ 20.

On November 28, 2017, at his sixth master calendar hearing, Urbina informed the IJ that his visa petition had been granted, which would permit the IJ to adjudicate the re-adjustment of his status. Id. ¶ 21. Urbina, who had been in custody throughout these proceedings, also moved for a bond re-determination, explaining that he had been detained for approximately six months at that point. Id. The IJ denied Urbina's motion for an individualized bond determination, finding that because the charges of removability had been sustained Urbina was subject to mandatory detention under 8 U.S.C. § 1226(c) based on his statutory burglary convictions. Id. Urbina appealed the IJ's decision denying bond to the BIA. Id. ¶ 22.

On January 22, 2018, while his appeal of the IJ's bond decision was pending, Urbina appeared with counsel before the IJ for his first individual merits hearing on the re-adjustment of his status. Id. ¶ 23. During preliminary matters, it was determined that Urbina would have to wait approximately seven years before receiving a visa. Id. As a result, the IJ held that Urbina's status could not be re-adjusted, and ordered him removed to Guatemala. Id. Urbina appealed that order to the BIA, primarily challenging both findings of removability. Id. ¶ 25.

On April 17, 2018, while both of Urbina's appeals were pending before the BIA, the Supreme Court decided Sessions v. Dimaya, 138 S. Ct. 1204 (2018), in which it held that the residual clause of the federal criminal code's definition of "crime of violence," as incorporated

into the Immigration and Nationality Act's definition of "aggravated felony," was unconstitutionally vague. Id. This decision invalidated the charge of removability under 8 U.S.C. § 1227(a)(2)(A)(iii) because Urbina's statutory burglary convictions, on which that charge had been premised, no longer qualified as aggravated felonies under the now-unconstitutional residual clause. [Dkt. 7-1 ¶ 30].

On August 18, 2018, DHS filed a motion with the BIA to remand all of Urbina's appeals to the IJ. Id. ¶ 31. In that motion, DHS conceded that Urbina was no longer removable under 8 U.S.C. § 1227(a)(2)(A)(iii) and explained that, as a result, Urbina was eligible for other forms of relief which had not previously been available to him, such as cancellation of removal. Id. Urbina opposed DHS's motion, and requested that the BIA rule on the remaining charge of removability under 8 U.S.C. § 1227(a)(2)(A)(ii). Id. ¶ 32.

On October 30, 2018, the BIA issued a decision as to both charges of removability. Id. ¶ 33. With regard to Urbina's removability under 8 U.S.C. § 1227(a)(2)(A)(iii), the BIA held that the charge could not be sustained in light of the Dimaya decision. Id. With regard to Urbina's removability under 8 U.S.C. § 1227(a)(2)(A)(ii), the BIA held that the charge could not be sustained because his statutory burglary convictions did not qualify as categorical crimes involving moral turpitude. Id. Accordingly, the BIA vacated the IJ's decision, terminated Urbina's removal proceedings, and dismissed his bond appeal as moot. Id. On November 2, 2018, Urbina was released from ICE custody. Id. ¶¶ 32, 34.

On November 29, 2018, DHS filed a motion to reconsider, asserting that the BIA erred in holding that Urbina's statutory burglary convictions were not categorical crimes involving moral turpitude. Id. ¶ 35. Specifically, DHS argued that the BIA failed to consider whether the underlying crime involved in each conviction—i.e., larceny, which was the crime which Urbina

intended to commit inside the burgled dwellings—qualified as a categorical crime involving moral turpitude. Id. ¶¶ 7, 35. Over a year later, on January 2, 2020, the BIA issued a decision granting DHS's motion in which it held that Urbina's statutory burglary convictions qualified as categorical crimes involving moral turpitude, making him removable under 8 U.S.C. § 1227(a)(2)(A)(ii). Id. ¶ 36. Accordingly, the BIA reinstated Urbina's removal proceedings and remanded them to the IJ to allow Urbina to seek relief from removal. Id.

On February 24, 2020, ICE sent Urbina a letter requesting that he appear at the ICE office in Fairfax, Virginia the following month. Id. ¶ 37. On February 26, 2020, Urbina appeared with counsel for his first master calendar hearing following the BIA's remand. Id. ¶ 38. At the hearing, Urbina indicated that he wanted to contest his removability. Id. ¶ 38. He was not detained after the hearing. Id. On March 16, 2020, Urbina appeared at the ICE office in Fairfax, Virginia as instructed and was taken into custody. Id. ¶ 39. During the 15 months between his release from and return to ICE custody, all indications are that Urbina was "a good member of society" who "worked, cared for his children and parents, attended church, reported to probation regularly, and paid restitution monthly." [Dkt. 1 ¶ 16].

On March 18, 2020, Urbina filed a motion before the IJ in which he requested, among other relief, a bond hearing and reconsideration of removability. [Dkt. 7-1 ¶ 40]. He also requested cancellation of removal. Id. DHS responded that Urbina's bond and removability were controlled by the BIA's decision granting DHS's motion for reconsideration, and requested that the case be set for an individual merits hearing solely to consider Urbina's request for cancellation of removal. Id. Urbina has remained in ICE custody since March 16, 2020. Id. ¶ 41.

5

On March 25, 2020, Urbina filed the pending Petition, in which he alleges three "grounds" on which he is being unlawfully detained by ICE.[3] [Dkt. 1 ¶¶ 24, 30, 52]. Specifically, he alleges that "respondents lack a lawful reason to detain [him]" and that "respondents violated [his] Fifth Amendment right[s]" to substantive and procedural "due process." Id. On their part, respondents have filed the pending Motion for Summary Judgment. [Dkt. 6]. Both pleadings are before the Court, and because oral argument will not assist in the decisional process, they will be resolved on the papers submitted.

## II. DISCUSSION

Urbina's Petition essentially raises two questions: (1) whether he is removable under 8 U.S.C. § 1227(a)(2)(A)(ii), and (2) whether his detention by ICE without a bond hearing violates his due process right to a bond hearing.[4] Urbina argues that he is not removable under 8 U.S.C. § 1227(a)(2)(A)(ii) because his statutory burglary convictions are not categorical crimes involving moral turpitude, and that his detention without a bond hearing violates his due process rights because it is unreasonable under the five-factor analysis employed in Portillo v. Hott, 322 F. Supp. 3d 698 (E.D. Va. 2018).

---

[3] Urbina is being detained pursuant to 8 U.S.C. § 1226(c)(1)(B), which provides that "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in [18 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)]."

[4] Urbina also purports to raise questions regarding "whether the procedures used before detaining him were constitutionally adequate" and "whether 8 U.S.C. § 1227(a)(2)(A)(ii) – the crimes involving moral turpitude ground for removability - partnered with 8 U.S.C. § 1226(c) – the mandatory detention statute - furthers a compelling government interest in a precise and narrow way before depriving him of his fundamental right to liberty," [Dkt. 9 at 2]; however, at the time Urbina was detained, the BIA had held that he was removable under § 1227(a)(2)(A)(ii) and therefore that he was subject to mandatory detention under § 1226(c), [Dkt. 7-1 ¶ 36], and in Demore v. Kim, 538 U.S. 510, 531 (2003), the Supreme Court upheld the constitutionality of § 1226(c), which incorporates by reference § 1227(a)(2)(A)(ii).

Respondents argue that, pursuant to 8 U.S.C. § 1252(b)(9), the Court lacks jurisdiction to adjudicate Urbina's removability, and that his detention without a bond hearing is not unreasonable under the five-factor analysis employed in Portillo. Respondents have the better argument on the first question; the Court lacks jurisdiction to adjudicate Urbina's removability pursuant to 8 U.S.C. § 1252(b)(9); however, Urbina has the better argument on the second question because his detention by ICE without an individualized bond hearing violates his due process rights.

A. **Standard of Review**

"Under [28 U.S.C. § 2241], the writ of habeas corpus shall not extend to a prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States." Scott v. Vargo, 2014 WL 11514067, at *2 (E.D. Va. Sept 5, 2014). Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Yosco v. Aviva Life & Annuity Co., 753 F. Supp. 2d 607, 609 (E.D. Va. 2010). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. "In reviewing the record on summary judgment, the court must draw any inferences in the light most favorable to the non-moving party." Id. Additionally, "[a]lthough Rule 56 does not provide for situations in which the court desires to enter summary judgment sua sponte, or in which the non-moving party is entitled to summary judgment, it is widely acknowledged that courts have this power, provided the non-moving party has sufficient notice and opportunity to respond." Haughton v. Crawford, 2016 WL 5899285, at *4 (E.D. Va. Oct. 7, 2016).

7

## B. Analysis

### 1. Whether Urbina is Removable Under 8 U.S.C. § 1227(a)(2)(A)(ii)

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists." United States v. Thompson, 924 F.3d 122, 129 (4th Cir. 2019). Here, Urbina argues that the Court has jurisdiction to adjudicate his removability pursuant to 28 U.S.C. § 2241(a), which provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." In response, respondents argue that the Court lacks jurisdiction to adjudicate Urbina's removability pursuant to 8 U.S.C. § 1252(b)(9), which provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section," and that "[e]xcept as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241] or any other habeas provision, . . . to review such an order or such questions of law or fact." Respondents' argument is persuasive.

Section 1252(b)(9) is known as a "zipper clause" that "channels judicial review" of removal proceedings to petitions for review filed with federal courts of appeals, thereby stripping district courts of jurisdiction over § 2241 habeas petitions involving issues covered by § 1252(b)(9). Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 483 (1999); see also Joshua M. v. Barr, 2020 WL 836606, at *25 (E.D. Va. Feb. 20, 2020). Accordingly, if the decision finding Urbina removable falls within § 1252(b)(9), the Court lacks jurisdiction to adjudicate this claim notwithstanding that it has been raised in a § 2241 habeas petition. See, e.g., Hatami v. Chertoff, 467 F. Supp. 2d 637, 641–42 (E.D. Va. 2006). Urbina argues that the

8

BIA's removability decision is not covered by § 1252(b)(9) because that provision only applies to review of orders of removal and he is not currently subject to an order of removal.

The Supreme Court recently construed § 1252(b)(9) in Jennings v. Bryant, 138 S. Ct. 830 (2018). As relevant here, a majority of the Justices held that § 1252(b)(9) is not limited to challenges to removal orders; rather, its applicability turns on whether the question the court must decide "arises from" any action taken or proceeding brought to remove an alien. See id. at 841 (Alito, J., plurality opinion, writing for himself, Roberts, C.J., and Kennedy, J.); id. at 854 (Thomas, J., concurring in part, writing for himself and Gorsuch, J.). In contrast, a minority of the Justices held that § 1252(b)(9) is limited to challenges to removal orders. See id. at 876 (Breyer, J., dissenting, writing for himself, Ginsburg, J., and Sotomayor, J.); see also Tun-Cos v. Perrotte, 2018 WL 3616863, at *5–6 (E.D. Va. Apr. 5, 2018), rev'd on other grounds by Tun-Cos v. Perrotte, 922 F.3d 514 (4th Cir. 2019) (explaining the various opinions in Jennings).[5] Accordingly, Urbina's argument that this Court has jurisdiction to address the question of whether he is removable under 8 U.S.C. § 1227(a)(2)(A)(ii) fails because the BIA's removability decision "arises from" his removal proceedings. Indeed, that question is the entire basis for his removal proceedings.[6] Urbina can challenge his removability in a petition for review filed with the Fourth Circuit, which has the clear authority to adjudicate whether an alien's prior

---

[5] But see Case De Md. V. U.S. Dep't of Homeland Sec., 924 F.3d 684, 697 (4th Cir. 2019) (suggesting, after Jennings, that § 1252(b)(9) may be limited to challenges to removal orders).

[6] See Duncan v. Kavanaugh, 2020 WL 619173, at *7 n.7 (D. Md. Feb. 10, 2020) ("The court is not persuaded by [the petitioner's] argument that [§ 1252(b)(9)] appl[ies] only to habeas petitions challenging final orders of removal. While it is true that a petitioner may not file [a petition for review with a federal court of appeals] until the order of removal is final, this exhaustion requirement does not mean that [§ 1252(b)(9)] contain[s] a loophole that allows petitioners to seek habeas review of a non-final order of removal. On its face, § 1252(b)(9) does not so limit its reach.").

9

convictions are crimes involving moral turpitude.[7] See, e.g., Martinez v. Sessions, 892 F.3d 655, 658 (4th Cir. 2018) (analyzing, on a petition for review, whether an alien's prior convictions were crimes involving moral turpitude).

### 2. Whether Urbina's Detention by ICE Violates his Due Process Right to a Bond Hearing

"[D]istrict courts in this district have applied a five-factor balancing test to determine whether prolonged detention without a bond hearing violates Due Process." Bah v. Barr, 409 F. Supp. 3d 464, 471 n.9 (E.D. Va. 2019) (collecting cases, including Portillo v. Hott, 322 F. Supp. 3d 698 (E.D. Va. 2018), Mauricio-Vasquez v. Crawford, 2017 WL 1476349 (E.D. Va. Apr. 24, 2017), and Haughton v. Crawford, 2016 WL 5899285 (E.D. Va. Oct. 7, 2016)). "The five factors are: (1) the duration of detention, including the anticipated time to completion of the aliens' removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final order of removal." Id. Although all five factors must be considered, on balance, the first factor is given "significant weight" due to the Supreme Court's well-documented "concerns about prolonged detention." Id. Here, the five factors plainly weigh in favor of Urbina.[8]

---

[7] Because the BIA has already "issued a definitive ruling on the issue," it appears that Urbina will be able to file such a petition for review as soon as the IJ issues an order of removal. Cabrera v. Barr, 930 F.3d 627, 633 (4th Cir. 2019).

[8] Respondents argue that "the appropriate standard" for determining whether Urbina's due process rights have been violated is "whether [his] continued detention carries out the purpose of § 1226(c) by ensuring [his] attendance at removal proceedings." [Dkt. 7 at 15]. In support of this argument, respondents cite the Supreme Court's decisions in Jennings v. Rodriguez, 138 S. Ct. 830 (2018), Demore v. Kim, 538 U.S. 510 (2003), and Zadvydas v. Davis, 553 U.S. 678 (2001). Respondents' argument is unpersuasive. None of these decisions "fully answers the question of how to balance the interests at stake, leaving this Court to engage in its own balancing of the

As to the first factor, Urbina has been detained by ICE for approximately 19 months, first from May 24, 2017 through November 2, 2018, and again from March 16, 2020 through today.

> Although the duration inquiry does not admit of hard and fast parameters, courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past the one-and-a-half-month average and five-month maximum thresholds cited by the Supreme Court in Demore. This approach also aligns with the concerns expressed in Zadvydas about detention in excess of six months. Moreover, at least one other court has contemplated the outer limit of reasonableness and determined that a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.

Portillo, 322 F. Supp. 3d at 707. Accordingly, this factor "weighs heavily in [Urbina's] favor as a prolonged and substantial burden on his liberty interest." Id. at 708. Indeed, Urbina's ongoing 19-month detention exceeds the 14-month detention at issue in Portillo, the 15-month detention at issue in Mauricio-Vazquez, and the 12-month detention at issue in Haughton, each of which the respective court found weighed strongly in favor of the detainee's right to be afforded a bond hearing. See id., Mauricio-Vasquez, 2017 WL 1476349, at *4; Haughton, 2016 WL 5899285, at *9.

As to the second factor, Urbina's 19-month civil detention exceeds the approximately 12 months he served for his statutory burglary convictions. Accordingly, this factor "weighs in his favor." Portillo, 322 F. Supp. 3d at 708; cf. Haughton, 2016 WL 5899285, at *9 (explaining that the second factor weighed in favor of the government because the detainee's civil detention did not exceed his underlying criminal detention). Respondents do not argue otherwise.

---

government's interest in detaining [Urbina] without a bond hearing to ensure his appearance at future proceedings and to protect the community[,] against [Urbina's] liberty interest in not being subject to extensive civil detention without having had an individualized bond review." Portillo, 322 F. Supp. 3d at 706–07.

11

As to the third factor, there is no indication of any bad-faith delay by the parties or the adjudicators. "Although the proceedings have been ongoing for a relatively long time," none of the delays "appear[s] to have been unreasonable." Portillo, 322 F. Supp. 3d at 708. Accordingly, this factor "does not appear to favor either party." Id.; see also Mauricio-Vasquez, 2017 WL 1476349, at *5; Haughton, 2016 WL 5899285, at *9. Although respondents "make[] much of the fact" that Urbina "could end his detention by conceding removability" rather than continuing to pursue administrative proceedings, this fact is "irrelevant." Haughton, 2016 WL 5899285, at *9. "[A]ppeals and petitions for relief are to be expected as a natural part of the process and an alien cannot be detained indefinitely merely because he seeks to explore avenues of relief that the law makes available to him." Id.

As to the fourth factor, there is no indication that Urbina's detention thus far has been extended by any legal error. Urbina asserts that his entire period of detention is due to substantive legal error because he is not now, and has never been, removable; however, as previously discussed, the Court lacks jurisdiction to adjudicate that question. Accordingly, this factor "weigh[s] somewhat in favor of the government," Portillo, 322 F. Supp. 3d at 708, although it is ultimately "of limited import." Haughton, 2016 WL 5899285, at *9.

As to the fifth factor, although the BIA reversed its original decision, which found that Urbina was not removable, and held that Urbina is removable, it remanded his removal proceedings to the IJ to enable Urbina to seek relief from removal, and Urbina has indicated an intent to seek cancellation of removal. "It is purely speculative to say what the IJ will do" in that situation; "however, it does appear to the Court that [any] proceedings before the IJ and the BIA [may] take significantly longer to conclude." Mauricio-Vasquez, 2017 WL 1476349, at *5. Accordingly, this factor "does not provide guidance to the Court in this case." Id.; cf. Portillo,

12

322 F. Supp. 3d at 708 (explaining that the fifth factor weighed in favor of the government because the detainee's arguments for relief from removal "[did] not appear especially strong"); Haughton, 2016 WL 5899285, at *10 (explaining that the fifth factor weighed in favor of the detainee because he "ha[d] a much stronger argument that a final order of removal is unlikely to be forthcoming than does the average alien detained under § 1226(c)").

As in Portillo, Mauricio-Vasquez, and Haughton, the five factors, on balance, weigh in favor of Urbina, particularly given that "the government's interest in guarding against [Urbina's] flight can be substantially protected even if [Urbina] is given an individualized bond hearing" because "a critical factor that the IJ will be forced to consider is whether [Urbina] is a flight risk and whether there are conditions of release that could reasonably secure his future appearance." Portillo, 322 F. Supp. 3d at 709. For example, the IJ will be forced to consider Urbina's exemplary record of attendance at his prior immigration proceedings; his diligent compliance with probation and restitution requirements following his release from state custody; his reputable conduct during the 15 months between his release from and return to ICE custody, including the three months during which he was aware that the BIA had reinstituted his removal proceedings; and his voluntary appearance at the ICE office in Fairfax, Virginia on March 16, 2020, at which he was taken into custody.[9] In light of all of these facts, "due process demands that [Urbina] receive an individualized inquiry into whether his continued detention fulfills the purposes of [§ 1226(c)]." Id. "[A]t the bond hearing, the government must demonstrate that [Urbina] is either a flight risk or a danger to the community by clear and convincing evidence."

---

[9] An additional factor of legitimate concern is the threat that COVID-19 currently poses to incarcerated persons as well as the delay that the disease has injected into judicial and administrative proceedings. Given this additional factor, coupled with no evidence of Urbina being a flight risk, there is no good reason for denying him a bond hearing.

13

Id.; see also Bah, 409 F. Supp. 3d at 472 (explaining that, "[a]s a practical matter, an alien who receives a bond hearing bears an initial burden of production to come forward with evidence that favors release" because he "is best situated to produce evidence on issues such as his ties to the United States, family connections, and employment history," but "[a]s a matter of Due Process, the government bears the ultimate burden of persuasion").[10]

### III. CONCLUSION

For the reasons stated above, by an Order to be issued with this Memorandum Opinion, Urbina's Petition will be granted in part and dismissed in part, and respondents' Motion will be granted in part and denied in part.

Entered this 4th day of June, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[10] Respondents argue that any bond hearing should be one "at which [Urbina] bears the burden of proof." [Dkt. 7 at 26]. In support of this argument, respondents cite the Supreme Court's decision in Jennings v. Rodriguez, 138 S. Ct. 830 (2018) and the Fourth Circuit's decision in Guzman Chavez v. Hott, 940 F.3d 867 (4th Cir. 2019). Respondent's argument is unpersuasive. The decisions in Bah and Portillo on this issue "remain[] good authority" because both Jennings and Guzman Chavez "focused on the protections required by [§ 1226(c)] and did not reach the constitutional question." Portillo, 322 F. Supp. 3d at 709 n.9. Here, the Court "must determine what protections are demanded by the Constitution, not what protections are authorized by the statute." Id.